# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 13, 2010

## TORREZ TALLEY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-08325-33      Paula Skahan, Judge**

---

**No. W2009-02036-CCA-R3-PC  - Filed May 9, 2011**

---

Petitioner, Torrez Talley, appeals the dismissal of his petition for post-conviction relief in which he alleged that he received ineffective assistance of trial counsel because counsel failed to sufficiently argue the standard of reasonable doubt during closing argument. After a thorough review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance of counsel and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Michael R. Working, Memphis, Tennessee, for the appellant, Torrez Talley.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William L. Gibbons, District Attorney General; and Betsy Carnesale, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

Following a jury trial, Petitioner was convicted of ten counts of especially aggravated kidnapping and four counts of aggravated robbery. He was sentenced to an effective one hundred and forty-year sentence. On appeal, this Court affirmed the convictions and sentences. *State v. Torrez Talley, Jevon Bryant, and Keith Ezell*, No. W2003-02237-CCA-R3-CD, 2006 WL 2947435 (Tenn. Crim. App. Oct. 16, 2006) *perm. app. denied* (Tenn., Mar.

19, 2007).  The facts surrounding Petitioner's convictions were summarized by this Court on direct appeal as follows:

The defendants' convictions in this case originate from the commission of especially aggravated kidnapping and aggravated robbery offenses against victims Kimberly Hancock, Omar Coleman, Divin Wright, Oliver Wright, Jerome Carpenter, Tonyell Somerville, and Jodeci Somerville.

The proof presented at trial reflects that Kimberly Hancock was at her home on January 11, 2001, when she received a phone call from a friend requesting she come by and pick up some clothes.  After receiving the call, she asked Divin Wright (her boyfriend), and Omar Coleman to accompany her.  The group took Omar's white Ford Focus. Upon arrival at the house, Kimberly and Divin went inside to pick up the clothes while Omar waited outside in the car.  Inside the house, Kimberly saw Defendant Talley, Thaddeus Brown, John Williams, and Jarvis Williams. As Kimberly proceeded upstairs, John Williams grabbed her by the neck and threw her down the stairs.  He then picked her up from the floor, placed her on the couch, and proceeded to question her about her boyfriend's brother, Oliver Wright, whom John Williams believed orchestrated a break-in of his home.  Divin was also forced to sit on the couch and questioned about the break-in.  The group of men including Defendant Talley threatened to kill Kimberly and Divin if they did not tell them what they wanted to know.  Divin was also told to remove his clothes.  At this time, Kimberly saw that Defendant Talley and the Williams' brothers had guns.

After Kimberly and Divin were questioned for a few minutes, Thaddeus Brown and Defendant Talley went outside. According to Omar Coleman, he was approached by three armed men and brought into the house under the pretense that he was under arrest. He was then forced to take off his clothes, and his checkbook, credit cards, and drivers license were taken.  At this time, Defendant Bryant arrived at the house armed with two guns.  Upon arrival, Defendant Bryant brandished his guns and exclaimed, "I want the bitch who set it up."  Jarvis Williams told Kimberly that she was going to help find Oliver Wright.  Jarvis Williams and Defendant Bryant then forced Kimberly into a black Ford Probe and left.  After Jarvis Williams and Defendant Bryant left with Kimberly, Defendant Ezell entered the house wielding a shotgun.  Defendants Ezell and Talley then proceeded to beat Divin with their fists and guns.

After Oliver Wright was located, Jarvis Williams called him on the phone and asked if he would pick him up and take him to Auto Zone to get a battery. Oliver agreed. Thereafter, Jarvis Williams and Defendant Bryant met up with Thaddeus Brown and Defendant Ezell. At this time, Kimberly was moved to the backseat of a purple Dodge Intrepid. Defendant Ezell also sat in the backseat, armed with a shotgun. Later, Oliver arrived in a Dodge Neon accompanied by Jerome Carpenter, Tonyell Somerville (Oliver's girlfriend), and Jodeci Somerville (Tonyell's seven-year-old son). When Oliver and company arrived, Oliver got out of the car. Immediately, Defendants Bryant and Ezell, armed with guns, walked to Oliver's car and told him "[d]on't move. You niggers gonna die tonight."

Both Oliver and Jerome were forced to take off their clothes. Defendant Bryant hit Oliver in the head with a gun after Oliver asked what was going on. Oliver was forced into the trunk of the Intrepid, and Jerome was forced into the trunk of the Neon. In an attempt to get out of the trunk, Oliver put his leg out. While his leg was hanging out, Defendant Bryant closed the trunk on Oliver's leg, breaking it. With Defendant Ezell driving the Neon, the group left the area and drove to a different area of town. Here, Defendant Ezell took Tonyell Somerville's jewelry, cash, and purse. Defendant Ezell then ordered Tonyell and her son, Jodeci, out of the Neon. Before Tonyell left the car, however, Defendant Ezell told her to handover [sic] her identification. After Tonyell complied, Defendant Ezell told her that "we've got your ID, we have your address, we know where you live, we know what you look like. If we get caught, if we go to jail, if you call the police, we'll come back and kill you and your son." In the meantime, Jerome was taken out of the Neon's trunk and placed in the Intrepid's trunk with Oliver. A short time later, Kimberly was dropped off near her mother's house. Before being released, she was threatened with death if she called the police. However, both Kimberly and Tonyell called the police after being released.

Meanwhile, the defendants returned to the house with Jerome and Oliver. The defendants, along with the other assailants, placed Oliver and Divin in the middle of the floor and beat them with their fists and guns. Defendant Ezell also struck Omar in the back of the head with his shotgun. In addition to being beaten, Oliver was burned with cigarettes and Divin was burned after being tossed headfirst into a fireplace. The defendants then poured bleach on Oliver, Divin, Omar, and Jerome. The defendants informed these men that they would be taken to Mississippi and killed; whereupon, the defendants forced the men once again into the trunks of their vehicles and started driving toward

-3-

Mississippi. However, shortly after leaving the house, police officers initiated pursuit, which led to the release of the four men from the confines of the trunks and the eventual arrest of the defendants.

*Id*. at *1-3.

## II. Post-Conviction Hearing

Petitioner testified that he made the decision to proceed to trial pro se. The State's plea offer at the time of trial was thirty years. The previous offer was forty years to be served at eight-five percent. Petitioner testified that his case involved high publicity, and he felt that a change of venue would have been better for him because there would have been less publicity and less hostility.

Trial counsel testified that he spent a "terrible amount" of time with the jury during voir dire on the standard of reasonable doubt. He noted that unless something "strange" happened, he "would have pointed that to the jury at the beginning of the trial and at the end." Trial counsel testified that he went into great detail about the facts of the case and the problems with the State's case. He agreed that the whole point of his closing argument was to persuade the jury that the State failed to meet its burden of proving the case beyond a reasonable doubt. He also pointed out to the jury that they were not required to believe everything that the prosecutor said because he was a representative of the State and that Defendant had the right to a fair and impartial trial. Trial counsel said:

> [W]hen you have a closing argument like this you say those things to the jury and you try to highlight what you say was wrong with the - - with the State's proof and that it just - - if I didn't say the words, you know, come up to a beyond a reasonable doubt over and over again I think if you look at the jury selection that I paid close attention to the fact that they would have to find my client guilty beyond a reasonable doubt and to a moral certainty.

Trial counsel further testified that he had been practicing law somewhere between forty-three and forty-five years, and his practice over the past thirty to thirty-five years had been mainly criminal law. He estimated that he had tried more than two-hundred cases.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code. Ann. § 40-30-210(f). The trial court's application of the law to the facts is reviewed *de novo,* without a presumption of correctness. *Fields v. State,*

40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id*.; *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id.* at 690, 104 S.Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id*. Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. The right to effective assistance of counsel extends to opening and closing arguments. *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003); *Bell v. Cone*, 535 U.S. 685, 701-02, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his or her opening or closing argument is particularly important.

Petitioner argues that trial counsel was ineffective for failing to "seriously argue the standard of reasonable doubt in his closing argument." We disagree. As pointed out by the post-conviction court in the order denying post-conviction relief, trial counsel stated the following in closing argument:

> We've tried to bring your attention to what the proof has been against my client. And while we say that the state has not met their burden of proof to where their proof has been beyond a reasonable doubt; that then you go back to deliberate, based on what you've heard about my client - really put your mind to it - it is

-5-

our suggestion to you the state has not met their burden of proof. Mr. Lepone may say he's done it, but it's up to you to make that decision. Just because he's a representative of the state - Ms. Nichols or Mr. Lepone - cloaked with all of the powers of the State of Tennessee - when we started this case, you agreed that everybody is equal - the state and client. My client has a right to a fair and impartial trial.

Let me try to bring to your attention what you've already heard in this case as it applies to Torrez Talley.

Trial counsel then went on to review the evidence with the jury as presented at trial by both the State and the defense. The post-conviction court noted that although "[ t]rial counsel did not repeatedly state the words 'reasonable doubt,' trial counsel referenced the standard multiple times by highlighting the insufficiencies of the of the State's proof at trial." At the post-conviction hearing, trial counsel testified that the whole point of his closing argument was to persuade the jury that the State failed to meet its burden of proving the case beyond a reasonable doubt. He also reviewed the standard of reasonable doubt with the jury during voir dire.

We conclude that Petitioner has failed to show that trial counsel's assistance fell below acceptable standards or that Petitioner was prejudiced by any aspect of his trial counsel's assistance. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE